**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Shenzhen Chitado Technology Co., Ltd.<br><br>*Plaintiff*,<br><br>v.<br><br>Windhorse Technologies Inc.;<br>Dongguan Wind Horse New Energy Technology Limited d/b/a Windhorse Factory;<br>Shenzhen Wind Horse New Energy Technology Limited d/b/a Windhorse Shop;<br>Sprocomm Technologies Co., Ltd.;<br>Sprocomm Technologies Co., Limited d/b/a E Bike Factory Direct, Ebike Factory Direct, and Windhorse Ebike Factory;<br>EKU INC;<br>Shenzhenshi Heyuguoji Gongyinglianguanli Co., Ltd. d/b/a Ridwind;<br>Land Grabber Technology Co., Limited d/b/a GOSWIF; and<br>Zhengzhou Zeying Wangluokeji Youxiangongsi d/b/a SEHOMY Store,<br><br>*Defendants*. | **CASE NO. 1:26-cv-09457**<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Shenzhen Chitado Technology Co., Ltd. ("Plaintiff" or "Chitado") brings this action for patent infringement against the above-captioned defendants (collectively, "Defendants") for infringement of Plaintiff's U.S. Patent No. 12,649,534 B2 (the "'534 Patent") and U.S. Patent No. 12,595,012 B2 (the "'012 Patent," and together with the '534 Patent, the "Asserted Patents"). Upon actual

knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, Plaintiff alleges as follows:

## INTRODUCTION

1. This action concerns a coordinated manufacturing, supply, importation, distribution, branding, and online-sales network for electric riding devices that practice Plaintiff's patented inventions. The Accused Products include the WINDHORSE C2 Cargo, C3, C3 Max, and D1 models, together with materially identical C3 products sold under the RIDWIND and SEHOMY names (collectively, the "Accused Products").

2. The Accused Products are advertised, offered for sale, and sold throughout the United States through an interactive website and storefronts on Amazon.com, Walmart.com, TikTok Shop, and Temu (collectively, "Defendants' Online Stores"). Defendants use identical or substantially identical product structures, photographs, specifications, model designations, manuals, accessories, and marketing materials to sell the Accused Products to the same United States consumer market.

3. Plaintiff purchased and received physical C2 Cargo, C3, and C3 Max samples through Amazon.com and the WINDHORSE website, preserved and inspected those samples, and prepared a separate limitation-by-limitation claim chart for each model under each Asserted Patent. The six model-specific charts show that each of the three principal WINDHORSE models practices Claims 1-4 and 6-15 of the '534 Patent and Claims 1-2 and 4-7 of the '012 Patent, including the

claimed frame and substantially flat base or support plate; removable, substantially horizontal storage basket or storage cavity; opposed or openwork sidewalls and open top; front-positioned footrests; threaded mounting and adapter structures; reinforcing ribs; and power device mounted below the plate.

4. Trademark registrations, public corporate filings, marketplace seller disclosures, manufacturer identifications, overlapping addresses, common product materials, and the physical samples support a reasonable inference that certain Defendants are under common ownership or control and that the remaining Defendants participate in the same coordinated product-supply and distribution enterprise.

## JURISDICTION AND VENUE

5. This Court has original subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Act, 35 U.S.C. § 1 et seq.

6. This Court may exercise specific personal jurisdiction over each Defendant because each Defendant operates or participates in fully interactive, United States-facing online storefronts that display United States prices, accept United States orders, and offer shipment of the Accused Products to Illinois. Upon information and belief, each Defendant has offered the Accused Products for sale to Illinois residents and has made, caused, or participated in sales and shipments of the Accused Products into Illinois.

7. That inference is further supported by the common manufacturer, product model, branding, product-image, address, and control facts alleged below. The sales data and marketplace-account records necessary to identify each Illinois transaction are controlled by Defendants and the platforms.

8. Venue is proper in this District as to each Defendant that is not resident in the United States under 28 U.S.C. § 1391(c)(3), because such a Defendant may be sued in any judicial district. Those Defendants have also committed acts of infringement in this District by advertising, offering for sale, and selling the Accused Products for delivery to Illinois through their United States-facing online storefronts. Windhorse Technologies Inc. and EKU INC are domestic corporations that have committed acts of infringement in this District by advertising and offering the Accused Products for sale to Illinois residents and by making or causing sales and deliveries into Illinois through their United States-facing online storefronts.

## PARTIES

9. Plaintiff Shenzhen Chitado Technology Co., Ltd. is a limited liability company organized and existing under the laws of the People's Republic of China, with its principal place of business in Shenzhen, Guangdong Province, China. Plaintiff owns all substantial rights in the Asserted Patents, including the right to sue for infringement and recover damages.

10. Defendant Windhorse Technologies Inc. ("Windhorse US") is a California corporation with its principal and mailing address at 18281 Gothard

Street, Suite 111, Huntington Beach, California 92648. The WINDHORSE website identifies 401 Main Street #105, Huntington Beach, California 92648, as the address of the "Windhorse Store" and as its customer contact address. Upon information and belief, Windhorse US owns, operates, and/or controls the WINDHORSE website at windhorse.com, the TikTok Shop storefront "Windhorse Electric Bike," and the Walmart.com storefront "Windhorse," through which it offers and sells C2 Cargo, C3, C3 Max, and D1 Accused Products.

11. Upon information and belief, Defendant Dongguan Wind Horse New Energy Technology Limited ("Dongguan Wind Horse") is a company organized and existing under the laws of the People's Republic of China, with an address at Room 801, Building 3, No. 214 Dalang Shuixin Road, Dalang Town, Dongguan, Guangdong 523000, China. Amazon's Detailed Seller Information identifies "Dongguan Wind Horse New Energy Technology Limited" as the business entity operating the Amazon.com storefront "Windhorse Factory," through which C2 Cargo, C3, and C3 Max Accused Products are offered and sold. Future Machine Limited's 2025 annual report identifies the corresponding entity under the alternative English rendering "Dongguan Fengma New Energy Technology Co., Ltd." Chinese corporate records establish that Shenzhen Wind Horse owns 100% of Dongguan Wind Horse.

12. Upon information and belief, Defendant Shenzhen Wind Horse New Energy Technology Limited ("Shenzhen Wind Horse") is a company organized and existing under the laws of the People's Republic of China, with an address at Room

4C-405, Fourth Floor, Tianfa Building, Tian'an Digital City, Tian'an Chegongmiao Industrial Zone, Shatou Subdistrict, Futian District, Shenzhen, Guangdong 518042, China. Amazon's Detailed Seller Information identifies "Shenzhen Wind Horse New Energy Technology Limited" as the business entity operating the Amazon.com storefront "Windhorse Shop," through which C3 and C3 Max Accused Products are offered and sold. Future Machine Limited's 2025 annual report identifies the corresponding entity under the alternative English rendering "Shenzhen Fengma New Energy Technology Co., Ltd." Chinese corporate records establish that PRC Sprocomm owns 100% of Shenzhen Wind Horse.

13. Defendant Sprocomm Technologies Co., Ltd. ("PRC Sprocomm") is a company organized and existing under the laws of the People's Republic of China. Chinese corporate records identify its registered Chinese name as 深圳禾苗通信科技有限公司, Unified Social Credit Code 91440300693964493K. PRC Sprocomm directly owns 100% of Shenzhen Wind Horse and, through Shenzhen Wind Horse, indirectly owns 100% of Dongguan Wind Horse. PRC Sprocomm is also the owner of the WINDHORSE word and design marks, including U.S. Trademark Registration Nos. 7,165,714 and 7,442,835.

14. Defendant Sprocomm Technologies Co., Limited ("HK Sprocomm") is a company organized and existing under the laws of Hong Kong, with a business address at Room 14, 29/F, Goodview Commercial Centre, 2-16 Fa Yuen Street, Mong Kok, Hong Kong. Temu Store Information identifies "Sprocomm Technologies Co., Limited" as the business entity associated with the Temu storefronts "E Bike

Factory Direct," "Ebike Factory Direct," and "Windhorse Ebike Factory," through which WINDHORSE Accused Products are offered and sold.

15. Defendant EKU INC ("EKU") is a corporation organized and existing under the laws of the State of New York, with a business address at 54 Hightop Lane, Jericho, New York 11753. TikTok Shop's seller disclosures identify EKU INC as the business entity operating the TikTok Shop storefront "EKUNIVERS." EKU INC also owns U.S. Trademark Registration No. 7,625,391 for the EKUNIVERS mark. Through the EKUNIVERS storefront, EKU INC offers and sells WINDHORSE C2 Cargo, C3, C3 Max, and other WINDHORSE electric riding products.

16. Upon information and belief, Defendant Shenzhenshi Heyuguoji Gongyinglianguanli Co., Ltd. ("Shenzhen Heyu") is a company organized and existing under the laws of the People's Republic of China, with an address at Room 1625, West Zone D, First Floor, Building A, Tengfei Industrial Building, No. 6 Taohua Road, Futian District, Shenzhen, China. Shenzhen Heyu owns and/or operates the Amazon.com storefront "Ridwind," through which it offers the C3 product platform under the RIDWIND name, including ASINs B0FCC1X45B and B0DY6ZBJ8W.

17. Upon information and belief, Defendant Land Grabber Technology Co., Limited ("Land Grabber") is a company organized and existing under the laws of Hong Kong, with an address at Flat/Room 2902, 29/F, Ho King Commercial Centre, 2-16 Fa Yuen Street, Mong Kok, Hong Kong. Land Grabber owns and/or operates

the Temu storefront "GOSWIF," through which it offers a WINDHORSE C3 Accused Product, including listing ID 601100136017329.

18. Upon information and belief, Defendant Zhengzhou Zeying Wangluokeji Youxiangongsi ("Zhengzhou Zeying") is a company organized and existing under the laws of the People's Republic of China, with an address at Yard No. 3, Zhuangwang Resettlement Area, Shuangqiao Subdistrict, Zhengzhou High-Tech Industrial Development Zone, Henan, China. Zhengzhou Zeying owns and operates the Amazon.com storefront "SEHOMY Store," through which it offers the C3 product platform under the SEHOMY name, including ASIN B0F4MS9S91.

19. The table below summarizes each Defendant and its associated storefronts. Windhorse US, Dongguan Wind Horse, Shenzhen Wind Horse, PRC Sprocomm, and HK Sprocomm are referred to collectively as the "Core Windhorse Defendants." EKU INC, Shenzhen Heyu, Land Grabber, and Zhengzhou Zeying are referred to collectively as the "Additional Storefront Defendants."

| No. | Defendant | Associated Storefront(s) / Role |
|---|---|---|
| 1 | Windhorse Technologies Inc. | Windhorse website;<br>TikTok Shop - "Windhorse Electric Bike";<br>Walmart.com - "Windhorse" |
| 2 | Dongguan Wind Horse New Energy Technology Limited | Amazon.com - "Windhorse Factory" |
| 3 | Shenzhen Wind Horse New Energy Technology Limited | Amazon.com - "Windhorse Shop" |
| 4 | Sprocomm Technologies Co., Ltd. (PRC Sprocomm) | WINDHORSE trademark owner; corporate parent of Shenzhen Wind Horse |

| No. | Defendant | Associated Storefront(s) / Role |
|---|---|---|
| 5 | Sprocomm Technologies Co., Limited (HK Sprocomm) | Temu - "E Bike Factory Direct," "Ebike Factory Direct," and "Windhorse Ebike Factory" |
| 6 | EKU INC | TikTok Shop - "EKUNIVERS" |
| 7 | Shenzhenshi Heyuguoji Gongyinglianguanli Co., Ltd. | Amazon.com - "Ridwind" |
| 8 | Land Grabber Technology Co., Limited | Temu - "GOSWIF" |
| 9 | Zhengzhou Zeying Wangluokeji Youxiangongsi | Amazon.com - "SEHOMY Store" |

## DEFENDANTS' COMMON CONTROL AND COORDINATED NETWORK

20. PRC Sprocomm owns U.S. Trademark Registration No. 7,165,714 for the stylized "windhorse" mark and U.S. Trademark Registration No. 7,442,835 for the WINDHORSE word-and-design mark " ", each covering International Class 12 goods including electric bicycles and electrically powered motor scooters (collectively, the "WINDHORSE Marks"). The WINDHORSE-branded Accused Products are advertised and sold under the WINDHORSE Marks owned by PRC Sprocomm. Copies of the registration certificates are attached hereto as **Exhibit 4**.

21. Public corporate records establish a direct, wholly owned corporate chain among the three PRC entities: PRC Sprocomm owns 100% of Shenzhen Wind Horse, which in turn owns 100% of Dongguan Wind Horse. Accordingly, Shenzhen Wind Horse is PRC Sprocomm's direct wholly owned subsidiary, and Dongguan Wind Horse is its indirect wholly owned subsidiary.

22. Future Machine Limited, formerly known as Sprocomm Intelligence Limited, is the publicly listed parent of the broader corporate group and is a separate legal entity from PRC Sprocomm and HK Sprocomm. Future Machine's 2025 annual report identifies 深圳禾苗通信科技有限公司 under the English rendering "Shenzhen Sprocomm Telecommunication Technology Co., Ltd." as the Group's main operating subsidiary. The same annual report separately identifies a Hong Kong subsidiary referred to as "HK Sprocomm" and reports that 100% of its equity interest and voting power is attributable to the Future Machine group. The report also identifies Shenzhen Fengma New Energy Technology Co., Ltd. and Dongguan Fengma New Energy Technology Co., Ltd. as group subsidiaries in which 100% of the equity interest and voting power was attributable to the group. Relevant excerpts of Future Machine Limited's 2025 Annual Report are attached hereto as **Exhibit 5**.

23. The same annual report discloses overlapping management among the Sprocomm-Windhorse entities. It identifies Li Chengjun as a director of Shenzhen Sprocomm, Sprocomm group entities including HK Sprocomm, and Shenzhen Fengma New Energy Technology Co., Ltd. It identifies Xiong Bin as a director and vice general manager of Shenzhen Sprocomm, a director of Windhorse Technologies Inc., and a supervisor of Shenzhen Fengma. Windhorse Technologies Inc.'s January 11, 2026 California Statement of Information independently confirms that Bin Xiong serves as one of its directors and identifies the company's business as trading electric bicycles.

24. Windhorse Technologies Inc. has expressly identified Defendant HK Sprocomm as its parent company. In a Certification and Notice of Interested Parties filed in the United States District Court for the Central District of California, Windhorse Technologies Inc. identified "Sprocomm Technologies Co., Limited," a Hong Kong company, as its parent company and identified Windhorse New Technology Energy Limited, another Hong Kong company, as its related company.

25. Public records further establish a direct regulatory relationship between Shenzhen Wind Horse and Windhorse Technologies Inc. In a September 8, 2023 FCC Letter of Attestation relating to an electric-bicycle equipment authorization, Shenzhen Wind Horse designated Windhorse Technologies Inc. as its United States agent for service of process.

26. Plaintiff's Amazon purchase records identify "Windhorse Factory" as the seller of the purchased C2 Cargo, C3, and C3 Max models. Marketplace seller and product disclosures associate "Windhorse Factory" and the purchased products with Dongguan Wind Horse. The WINDHORSE website and WINDHORSE-branded storefronts on TikTok Shop, Walmart, Amazon, and Temu offer overlapping WINDHORSE model families using common product photographs, specifications, manuals, accessories, and warranty or support materials. Windhorse.com also offers the WINDHORSE D1, which is marketed as a WINDHORSE cargo e-scooter and incorporates a detachable middle basket.

27. The RIDWIND and SEHOMY listings further connect the Additional Storefront Defendants to the same source. Product data associated with RIDWIND

ASINs B0FCC1X45B and B0DY6ZBJ8W identify Dongguan Wind Horse New Energy Technology Limited as the manufacturer and identify the product model as "C3." Product data associated with SEHOMY ASIN B0F4MS9S91 likewise identify Dongguan Wind Horse as the manufacturer and identify the model number as "C3." The corresponding listings depict the same or materially identical claim-relevant structure as the WINDHORSE C3. Representative copies of the RIDWIND and SEHOMY product listings and product information are attached hereto as **Exhibits 10 and 11**, respectively.

28. HK Sprocomm and Land Grabber use addresses on the same street and the same twenty-ninth floor at 2-16 Fa Yuen Street, Mong Kok, Hong Kong. Land Grabber's GOSWIF storefront offers a product under the WINDHORSE name. Product materials made available through the GOSWIF storefront include a WINDHORSE-branded C2 Cargo user manual that directs users to Windhorse.com and support@windhorse.com for product information and support. A representative copy of that user manual is attached hereto as **Exhibit 9.** The overlapping address, floor, WINDHORSE-branded product, and use of WINDHORSE product and support materials support an inference of affiliation, agency, authorized distribution, and/or common control.

29. EKU INC expressly uses the WINDHORSE Marks and the same C2 Cargo, C3, and C3 Max model names. Upon information and belief, EKU INC is an authorized, affiliated, or commonly controlled storefront operator or reseller supplied by the same Core Windhorse Defendants.

30. PRC Sprocomm, HK Sprocomm, Shenzhen Wind Horse, Dongguan Wind Horse, and Windhorse US are members of the same broader Sprocomm-Windhorse corporate group and operate in connection with the WINDHORSE brand and Accused Products. PRC Sprocomm, Shenzhen Wind Horse, and Dongguan Wind Horse are connected through a direct, wholly owned corporate chain. Future Machine's 2025 annual report identifies HK Sprocomm as a Hong Kong subsidiary within the same broader group, and Windhorse US has expressly identified HK Sprocomm as its parent company. The annual report and California corporate records further establish overlapping management among these entities.

**JOINDER OF DEFENDANTS**

31. As alleged above, each Defendant is connected to the same accused product platform and coordinated chain of manufacture, branding, supply, and online distribution. The Core Windhorse Defendants are linked through direct and indirect ownership, overlapping management, ownership and use of the WINDHORSE Marks, and documented United States regulatory and operational relationships. The Additional Storefront Defendants offer either WINDHORSE-branded Accused Products or materially identical C3 products identified as manufactured by Dongguan Wind Horse and marketed using common model designations, product images, specifications, and other sales materials.

32. Joinder of Defendants in this single action is proper under 35 U.S.C. § 299 and Federal Rule of Civil Procedure 20.

33. Plaintiff's right to relief is asserted against Defendants jointly, severally, or in the alternative, and arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, supplying, importing, distributing, offering for sale, and selling of the same accused product platform, including the C2 Cargo, C3, C3 Max, and D1 model families and materially identical private-label variants. The same series of transactions includes the manufacture, branding, supply, and sale of the Accused Products through the wholly owned PRC corporate chain consisting of PRC Sprocomm, Shenzhen Wind Horse, and Dongguan Wind Horse. The same series of transactions further includes HK Sprocomm's offering and sale of WINDHORSE Accused Products through its United States-facing Temu storefronts. It further includes the downstream offering and sale by the Additional Storefront Defendants of WINDHORSE-branded Accused Products or materially identical private-label C3 products identified as manufactured by Dongguan Wind Horse and marketed using common model designations, product images, specifications, and sales materials.

34. Common questions of fact include the design and construction of the Accused Products; their common manufacturer and source; the identity of the persons directing manufacture, branding, importation, and United States distribution; whether the Accused Products practice Claims 1-4 and 6-15 of the '534 Patent and Claims 1-2 and 4-7 of the '012 Patent; and Defendants' coordinated marketing, fulfillment, and sale of the Accused Products.

35. The proof will substantially overlap, including inspection of the purchased C2 Cargo, C3, and C3 Max products; common technical, manufacturing, and source documents; the Asserted Patents and substantially overlapping claim-construction issues; model-specific claim charts; expert testimony; marketplace seller, listing, and transaction records; records identifying Dongguan Wind Horse as the manufacturer of the private-label C3 products; and corporate records establishing ownership, common management, and shared business infrastructure among the Core Windhorse Defendants.

36. Defendants are not joined merely because each is accused of infringing one or both Asserted Patents. Upon information and belief, Defendants comprise or participate in the same integrated Windhorse corporate, manufacturing, supply, and distribution group. Their accused acts arise from the same series of transactions involving the manufacture, branding, supply, importation, distribution, offering for sale, and sale of the same C2 Cargo, C3, and C3 Max product platforms and materially identical private-label variants through affiliated, authorized, supplied, or otherwise coordinated online storefronts. Joinder is therefore proper under 35 U.S.C. § 299(a) and Federal Rule of Civil Procedure 20(a)(2).

## PLAINTIFF'S BUSINESS AND THE ASSERTED PATENTS

37. Plaintiff is a designer, manufacturer, and seller of electric riding device products, including under its GYROOR brand. Plaintiff invests substantial resources in developing innovative products and protecting its intellectual property.

38. Plaintiff has expended substantial time, money, and other resources in developing, advertising, promoting, and protecting its products and patented technology.

39. Plaintiff is the assignee and owner of all substantial rights in the Asserted Patents, including the right to sue for and recover damages for infringement. A true and correct copy of the ’534 Patent is attached hereto as **Exhibit 1**. A true and correct copy of the ’012 Patent is attached hereto as **Exhibit 6**.

40. The ’534 Patent, titled “Electric Riding Device,” was duly and legally issued by the United States Patent and Trademark Office on June 9, 2026, from U.S. Patent Application No. 19/341,002, filed September 26, 2025. The application was published as U.S. Patent Application Publication No. 2026/0028081 A1 on January 29, 2026. *See* **Exhibit 1**.

41. The ’534 Patent is valid and enforceable and is entitled to the presumption of validity under 35 U.S.C. § 282. The ’534 Patent contains fifteen claims, including independent Claims 1, 6, 11, and 15. Plaintiff asserts Claims 1-4 and 6-15.

42. Independent Claim 15 of the ’534 Patent is representative and recites:

> An electric riding device, comprising: a frame body defining a substantially flat support plate located between front and rear ends of the frame body, the support plate having a longitudinal dimension and a lateral dimension; a front wheel and a rear wheel coupled to front and rear portions of the frame body, respectively; a handlebar assembly coupled to the frame body and configured to be grasped by a user’s hands; a seat coupled to the frame body; and a power device coupled to the frame body and configured to supply power to the electric riding device; wherein

> the frame body comprises a storage cavity having a longitudinal dimension, a lateral dimension, and a height dimension, wherein the longitudinal dimension of the storage cavity is greater than both the lateral dimension and the height dimension thereof; wherein the storage cavity is at least partially defined by a left sidewall and a right sidewall disposed on the frame body, the left and right sidewalls are opposed to each other, a lower end of the left sidewall being positioned proximate a left edge of the support plate and extending substantially vertically upward therefrom, and a lower end of the right sidewall being positioned proximate a right edge of the support plate and extending substantially vertically upward therefrom; wherein the electric riding device further comprises a left footrest and a right footrest disposed on opposite sides in the lateral direction, wherein an installation position of the left footrest is longitudinally nearer a left front end of the support plate rather than at or adjacent to a left rear end of the support plate, and an installation position of the right footrest is longitudinally nearer a right front end of the support plate rather than at or adjacent to the right rear end of the support plate; wherein each of the left sidewall and right sidewall is removably disposed on the frame body; and wherein the storage cavity has an open top.

43. Plaintiff asserts Claims 1-4 and 6-15 of the ’534 Patent. The asserted independent claims cover overlapping configurations of an electric riding device having a substantially flat base or support plate; a removable, substantially horizontal storage basket or storage cavity with an open top and opposed sidewalls; and left and right footrests positioned near the front of the base or support plate. Claim 1 further recites dimensional ratios, an openwork basket bottom, substantially mirror-symmetrical sidewalls, arcuate top corners, rotatable footrests, and perpendicular basket bars. Claims 6 and 11 recite alternative opposed-sidewall arrangements for a removable basket, and Claim 15 recites removable sidewalls defining a longitudinal, open-top storage cavity. The asserted dependent claims add, among other things, threaded mounting, longitudinally spaced mounting plates, bent basket portions conforming to the frame, and a mesh structure.

44. The ’012 Patent, titled “Electric Riding Device,” was duly and legally issued by the United States Patent and Trademark Office on April 7, 2026, from U.S. Patent Application No. 19/340,910, filed September 26, 2025. The ’012 Patent and the ’534 Patent were filed on the same day, name the same inventors, and claim priority to the same international application, No. PCT/CN2025/106945. The ’012 Patent is valid and enforceable and is entitled to the presumption of validity under 35 U.S.C. § 282. The ’012 Patent contains seven claims, including independent Claims 1 and 7. Plaintiff asserts Claims 1-2 and 4-7.

45. Independent Claim 7 of the ’012 Patent is representative and recites:

> An electric riding device, comprising: a frame body; a front wheel installed at a front side of the frame body, and a rear wheel installed at a rear side of the frame body; a handlebar assembly installed on the frame body and configured to be handled by a user; a seat installed on the frame body; and a power device installed on the frame body and configured to power the electric riding device; wherein the frame body comprises a substantially flat base portion, a front raised portion extending upwardly from a front end of the base portion, and a rear raised portion extending upwardly from a rear end of the base portion, the base portion having a longitudinal dimension and a lateral dimension; wherein the front raised portion is configured to support a head tube at a distal end away from the base portion, the head tube being for installing the handlebar assembly to the frame body, and at least a portion of the rear raised portion is configured to support the seat; wherein the electric riding device further comprises a storage basket removably installed on the frame body, the storage basket defining a contact surface configured to engage an upper surface of the base portion and permit the storage basket to be stably placed thereon, such that when the storage basket is placed on the upper surface of the base portion, the contact surface and the upper surface of the base portion are in substantially horizontal contact; and wherein the electric riding device further comprises a left footrest and a right footrest, the left and right footrests being disposed on opposite sides in the lateral direction, wherein an installation position of the left footrest is longitudinally nearer a left-front end of the base portion rather than at or adjacent to a left-rear end of the base portion, and an installation position

of the right footrest is longitudinally nearer a right-front end of the base portion rather than at or adjacent to a right-rear end of the base portion.

46. Plaintiff asserts Claims 1-2 and 4-7 of the ’012 Patent. Independent Claim 1 covers, among other things, a base portion formed by laterally spaced left and right frame members and a support plate; a storage assembly mounted by a threaded connection mechanism; pivotable left and right footrests mounted near the front of the frame through fixed adapters having vertically spaced connecting plates and pivot pins; anti-slip strips; front and rear reinforcing ribs; and a power device under the support plate. Dependent Claims 2 and 4-6 further recite storage-cavity walls, a mesh structure, side-mounted footrests, and adapters fixed to the storage assembly. Independent Claim 7 covers a substantially flat base with front and rear raised portions, a removable storage basket having substantially horizontal surface contact with the base, and front-positioned footrests.

**DEFENDANTS’ UNLAWFUL CONDUCT**

47. Plaintiff maintains an anti-infringement program that includes monitoring e-commerce websites and marketplace listings, identifying suspected infringing products, conducting test purchases, preserving and inspecting physical samples, and comparing the products with the claims of Plaintiff’s patents.

48. Defendants have advertised, offered for sale, sold, imported, supplied, and/or distributed the Accused Products, including through the storefronts and representative listings identified in **Exhibit 8**. **Exhibit 8** is illustrative and not exhaustive and does not limit Plaintiff’s allegations to any particular listing identifier, URL, seller ID, storefront name, product color, configuration, or variant.

Online listings and storefronts are dynamic and may be removed, disabled, relisted, reactivated, renumbered, replaced, mirrored, migrated, or newly created. Plaintiff's allegations encompass the same or materially identical Accused Products offered for sale or sold by or on behalf of Defendants through such listings and storefronts.

49. The '012 Patent issued on April 7, 2026, and the '534 Patent issued on June 9, 2026. Upon information and belief, after issuance of each applicable Asserted Patent and through the filing of this Complaint, Defendants continued to advertise, offer for sale, sell, import, supply, and/or distribute the Accused Products in or into the United States, including Illinois, through their online storefronts and coordinated sales network.

50. After issuance of the '012 Patent, Plaintiff purchased representative WINDHORSE C2 Cargo, C3, and C3 Max products through the Amazon.com storefront "Windhorse Factory" and directly through Windhorse.com for delivery to Downers Grove, Illinois. After issuance of both Asserted Patents, Plaintiff placed additional orders for Accused Products through the Amazon.com storefronts "Windhorse Shop," "Ridwind," and "SEHOMY Store," the TikTok Shop storefront "Windhorse Electric Bike," the Walmart.com storefront "Windhorse," and the Temu storefront "E Bike Factory Direct," and directly through Windhorse.com for a WINDHORSE D1, all for delivery to Downers Grove, Illinois. Representative purchase records are attached hereto as **Exhibit 2**.

51. Model-specific claim charts comparing the inspected C2 Cargo, C3, and C3 Max samples with the asserted claims of the '534 Patent and the '012 Patent are attached hereto as **Exhibits 3A-3C and 7A-7C**, respectively.

52. No Defendant is licensed or otherwise authorized by Plaintiff to make, use, offer to sell, sell, or import any product practicing either Asserted Patent.

53. Defendants have made, used, imported, distributed, offered for sale, and/or sold the Accused Products in the United States and, upon information and belief, have continued those acts after issuance of each applicable Asserted Patent, including through offers for delivery to and sales in Illinois.

54. The inspected C2 Cargo, C3, and C3 Max products literally satisfy every limitation of Claims 1-4 and 6-15 of the '534 Patent, as shown in **Exhibits 3A-3C**, and Claims 1-2 and 4-7 of the '012 Patent, as shown in **Exhibits 7A-7C**. In the alternative, to the extent any asserted claim limitation is not literally satisfied, the Accused Products infringe under the doctrine of equivalents because any differences are insubstantial and the corresponding elements perform substantially the same function, in substantially the same way, to achieve substantially the same result.

55. Defendants' infringement has caused and, unless enjoined, will continue to cause Plaintiff harm, including lost sales, price erosion, loss of market share, interference with Plaintiff's market entry and expansion, harm to customer and distributor relationships, and erosion of Plaintiff's patent right to exclude, some of which cannot be fully remedied by money damages alone.

56. Defendants have derived revenue from the accused conduct. Plaintiff is entitled to damages adequate to compensate for infringement, in no event less than a reasonable royalty, together with interest and costs, and to appropriate injunctive and other equitable relief.

**COUNT I**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 12,649,534 B2)**

57. Plaintiff incorporates by reference Paragraphs 1 through 56 as though fully set forth herein.

58. The ’534 Patent is valid and enforceable, and Plaintiff owns all substantial rights in the ’534 Patent, including the right to sue for and recover damages for infringement.

59. Defendants have directly infringed and continue to directly infringe Claims 1-4 and 6-15 of the ’534 Patent by making, using, offering to sell, selling, and/or importing the Accused Products in or into the United States after June 9, 2026, without Plaintiff’s authorization, in violation of 35 U.S.C. § 271(a).

60. As shown in **Exhibits 3A, 3B, and 3C**, the representative physical C2 Cargo, C3, and C3 Max products practice every limitation of Claims 1-4 and 6-15. Plaintiff reserves the right to supplement or amend its infringement contentions based on discovery, claim construction, additional product inspections, and Defendants’ production of technical information.

61. Windhorse Technologies Inc., Dongguan Wind Horse, Shenzhen Wind Horse, and HK Sprocomm offer and/or sell WINDHORSE Accused Products through the United States-facing channels alleged above. PRC Sprocomm owns the

WINDHORSE Marks and, upon information and belief, participates in the branding, manufacture, supply, importation, and/or distribution of WINDHORSE Accused Products through the Sprocomm-Windhorse corporate network. EKU INC offers WINDHORSE model families, Land Grabber offers a WINDHORSE C3, and the listings and product data for the RIDWIND and SEHOMY products identify Dongguan Wind Horse as manufacturer and C3 as the model and display the same claim-relevant structure. Upon information and belief, each Defendant therefore directly participates in United States transactions involving products that practice Claims 1-4 and 6-15.

62. Defendants purposefully operate or participate in United States-facing online stores through which the Accused Products are offered for delivery to Illinois. Defendants' and the platforms' sales and transaction records will establish the full scope of Illinois and nationwide infringement.

63. Defendants' infringement has been a direct and proximate cause of injury to Plaintiff. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial, including lost profits and/or no less than a reasonable royalty.

64. Unless preliminarily and permanently enjoined, Defendants will continue infringing the '534 Patent, causing ongoing irreparable harm for which there is no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief under 35 U.S.C. § 283.

65. Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs. To the extent established by the evidence, Plaintiff is also entitled to enhanced damages and a determination that this is an exceptional case under 35 U.S.C. § 285.

**COUNT II**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 12,595,012 B2)**

66. Plaintiff incorporates by reference Paragraphs 1 through 65 as though fully set forth herein.

67. The '012 Patent is valid and enforceable, and Plaintiff owns all substantial rights in the '012 Patent, including the right to sue for and recover damages for infringement.

68. Defendants have directly infringed and continue to directly infringe Claims 1-2 and 4-7 of the '012 Patent by making, using, offering to sell, selling, and/or importing the Accused Products in or into the United States on and after April 7, 2026, without Plaintiff's authorization, in violation of 35 U.S.C. § 271(a). Among other acts, the April 15, 2026 Illinois purchases identified above were sales of Accused Products made after the issuance of the '012 Patent.

69. As shown in **Exhibits 7A-7C**, the representative physical C2 Cargo, C3, and C3 Max products literally satisfy every limitation of Claims 1-2 and 4-7 of the '012 Patent. In the alternative, to the extent any asserted claim limitation is not literally satisfied, the Accused Products infringe under the doctrine of equivalents for the reasons alleged above. Plaintiff reserves the right to supplement or amend

its infringement contentions based on discovery, claim construction, and additional product inspections.

70. Unless preliminarily and permanently enjoined, Defendants will continue infringing the ’012 Patent, causing ongoing irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

71. Plaintiff is entitled to recover damages adequate to compensate for Defendants’ infringement of the ’012 Patent under 35 U.S.C. § 284, in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs, and, to the extent established by the evidence, enhanced damages and a determination that this is an exceptional case under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and each of them, as follows:

A. A judgment that each Defendant has infringed one or more claims of each of the Asserted Patents, including Claims 1-4 and 6-15 of the ’534 Patent and Claims 1-2 and 4-7 of the ’012 Patent;

B. A preliminary and permanent injunction under 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65 restraining Defendants, their officers, agents, servants, employees, attorneys, affiliates, distributors, resellers, storefront operators, and all persons in active concert or participation with them who receive actual notice of the injunction from:

a. making, using, offering for sale, selling, or importing products that infringe either Asserted Patent;

b. supplying, distributing, transferring, advertising, or operating storefronts for the Accused Products in active concert with an enjoined Defendant;

c. transferring storefronts, inventory, funds, accounts, or assets, forming new entities or seller accounts, or using any other device to evade the injunction;

C. An order, to the extent authorized by Rule 65(d)(2) and upon appropriate proof, requiring online marketplaces, payment processors, web hosts, fulfillment providers, and other persons in active concert or participation with Defendants and having actual notice of the injunction to disable the infringing listings, storefronts, payment accounts, and services used to continue the enjoined conduct;

D. An award of damages adequate to compensate Plaintiff for Defendants' infringement, in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

E. A finding, to the extent proven, that Defendants' infringement has been willful and an award of enhanced damages under 35 U.S.C. § 284;

F. A finding, to the extent proven, that this is an exceptional case under 35 U.S.C. § 285 and an award of Plaintiff's reasonable attorneys' fees;

G. An award of Plaintiff's costs and disbursements; and

H. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: August 7, 2026

/s/ Wei Wang

Wei Wang, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
wei.wang@glacier.law
212-729-5073
212-937-9999

Tao Liu, Esq.
41 Madison Avenue, Suite 2529
New York, NY 10010
Tao.liu@glacier.law
***Attorneys for Plaintiff***